**IN THE COURT OF APPEALS OF IOWA**

No. 18-1759
Filed December 19, 2018

**IN THE INTEREST OF K.S., P.S., and N.J.,
Minor Children,**

**A.S., Mother,**
    Appellant.
_____

        Appeal from the Iowa District Court for Adair County, Monty Franklin, District

Associate Judge.


        A mother appeals the termination of her parental rights in her three children.

**AFFIRMED.**


        Adam D. Hanson of Hanson Law Office, Winterset, for appellant mother.

        Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

        Julie A. Forsyth of Forsyth Law Office, P.L.L.C., Winterset, guardian ad

litem for minor children.


        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

A mother, Amanda, appeals from an order terminating her parental rights in her children, K.S., P.S., and N.J., pursuant to Iowa Code section 232.116(1)(e) and (f) (2018). In this appeal, she challenges the sufficiency of the evidence supporting termination of her parental rights. The fathers of the children do not appeal the termination of their respective parental rights.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) termination of parental rights is in the best interest of the children. *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

In her first claim of error, Amanda contends there is insufficient evidence supporting the statutory grounds authorizing termination of her parental rights. Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We choose to focus our attention on Iowa Code section 232.116(1)(f). Amanda concedes the State proved by clear and convincing evidence the first three elements of section 232.116(1)(f) and limits her to challenge to the fourth element. The fourth element "require[s] clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the

parent's custody at the time of the termination hearing." *E.H.*, 2017 WL 2684420, at *1.

On de novo review, we conclude there is clear and convincing evidence supporting termination of Amanda's rights pursuant to section 232.116(1)(f). First, Amanda admitted during the termination hearing the children could not be returned to her care. When asked, "Would you be able to receive the children back into your care today?" Amanda replied, "No." Amanda's admission is supported by other evidence. At the time of the termination hearing, Amanda lived with her federal-parolee paramour, Steve, in a two-bedroom home leased to Steve. Prior to the termination hearing, Amanda refused to sign a release permitting the Iowa Department of Human Services ("IDHS") to contact Steve and conduct a background investigation. Amanda only acquiesced and presented a signed release at the termination hearing, but it was too late for IDHS to perform any investigation. Without the necessary investigation, the children could not be returned to Amanda's care while she resided with Steve.

Second, Amanda's mental-health conditions preclude her from providing adequate care for her children. Amanda suffers from several mental-health ailments, including: bipolar-type-one disorder, obsessive-compulsive disorder, depression, and anxiety. The record reflects these conditions have prevented Amanda from providing adequate care to and supervision of the children. The record reflects Amanda has not resolved these concerns. Amanda's failure to address these concerns over the life of the case militates in favor of terminating her parental rights. *See In re J.L.*, No. 18-0324, 2018 WL 1858382, at *2 (Iowa Ct. App. Apr. 18, 2018) (considering mother's unresolved mental-health issues as a

factor supporting termination of her parental rights); *In re A.J.*, No. 17-1796, 2018 WL 437766, at *2 (Iowa Ct. App. Jan. 10, 2018) (concluding mother's "untreated mental-health conditions pose[d] a risk of harm" warranting termination); *In re T.H.*, No. 17-1558, 2017 WL 6520731, at *2 (Iowa Ct. App. Dec. 20, 2017) (concluding mother could not provide adequate supervision and care of her children due to unaddressed mental-health conditions).

Third, and related to these mental-health concerns, Amanda's inability to regulate her emotions and interact with others impedes her ability to provide adequate care for the children. *See In re O.N.*, No. 17-0918, 2017 WL 3525324, at *3 (Iowa Ct. App. Aug. 16, 2017) (finding mother's inability to regulate her emotions supported determination that her child could not be returned to her care). Amanda repeatedly discussed the court proceedings with the children despite being told not to do so. She encouraged the children to contact the guardian ad litem and state they wanted to return to Amanda's care. She offered to purchase the children pets if they did so. She struggled to manage all three children at the same time during visitation and acted inappropriately in front of the children. For example, during one visit, Amanda forgot the food she planned to bring, became upset, and shouted in front of the children that IDHS had ruined her life and just wanted her to fail. The children then attempted to comfort Amanda and deescalate the situation. Amanda remained upset for the remainder the visit, prompting K.S. to apologize to the supervising family safety, risk, and permanency ("FSRP") worker for his mother's conduct. On another occasion, Amanda became upset when K.S. refused to attend visitation, complained about it for the duration of her

visitation with N.J. and P.S., took her frustrations out on the children, and exclaimed that IDHS was violating her rights.

Fourth, in addition to her mental-health conditions, Amanda's substance-abuse problems also inhibit her ability to provide appropriate care for and supervision of the children. Amanda's substance abuse, including the use of methamphetamine, has been ongoing and dates back to her early teens. She tested positive for methamphetamine in August 2017. Amanda's substance abuse presents an appreciable risk of harm to the children. The record shows Amanda has exposed the children to her illegal behavior. For example, the children have observed Amanda smoking from a glass pipe. At least one of the children was also present when Amanda conducted a drug transaction. The record also reflects Amanda requested her children to pee in a cup for her, presumably for Amanda to obtain urine in an attempt to circumvent drug testing. Amanda's ongoing substance abuse presents an appreciable risk of adjudicatory harm to her children. *See In re A.Z.*, No. 18-1420, 2018 WL 4909831, at *2 (Iowa Ct. App. Oct. 10, 2018) (finding children could not be returned to the mother when she did not address her substance-abuse and mental-health issues); *In re A.W.*, No. 18-0094, 2018 WL 1182618, at *1 (Iowa Ct. App. Mar. 7, 2018) (finding mother's failure to address mental-health and substance-abuse issues supported termination of her parental rights); *In re C.E.*, No. 15-0835, 2015 WL 5578395, at *1 (Iowa Ct. App. Sept. 23, 2015) (collecting cases finding children could not be returned to parent with unresolved substance-abuse and mental-health issues).

In her next claim of error, Amanda challenges the State's reasonable efforts toward reunification. On appeal, Amanda contends reunification would have been

more likely had she been provided with additional transportation services. The FSRP visitation notes indicate Amanda made comments to her social worker regarding additional transportation services. However, this request was never brought before the court prior to termination as required. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("[V]oicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge."). This claim is not preserved for appellate review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (requiring parent request additional services prior to termination hearing in order to claim State failed to make reasonable efforts on appeal).

In her last claim of error, Amanda contends termination of her parental rights is not in the best interest of the children because the children are currently placed in different homes and there are no plans to reunite them in a single home. She notes IDHS could not locate a placement able to take all three children due to their behavioral issues, and she offers she is the only placement willing to do so. When making a best-interest determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). While there is a recognized interest in keeping siblings together, this interest does not usurp other considerations when making a best-interest assessment. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994).

We conclude termination of Amanda's rights is in the best interest of the children. As a result of Amanda's inability to provide a safe home for the children,

they have spent significant portions of their lives without a sense of permanency and in out-of-home placement. At the time of termination, thirteen-year-old K.S., ten-year-old P.S., and seven-year-old N.J., respectively, spent seventy-two, seventy-one, and thirty-nine months out of the home. All three children expressed their approval of the termination of Amanda's parental rights, and only N.J. indicated he would like to continue a relationship with Amanda. While the children are not likely to find themselves in the same home post-termination, we do not find that fact troubling in the instant case. K.S. and P.S. were initially placed together but were separated upon the advice of their therapist due to their volatile relationship. Although separated from his siblings, N.J. finds himself in a pre-adoptive home where the mother is a teacher and has worked extensively with him to catch up developmentally. *See A.S.*, 906 N.W.2d at 475 (finding continued placement in adoptive home was in the child's best interest). K.S. is also now in a pre-adoptive home, and P.S. has two promising adoptive prospects. *See id.* All three children's behavioral needs were caused by years of dysfunction in Amanda's care; it would be perverse to deny the children chances at stable homes and to require the children to remain in her care. These children need and deserve a sense of permanency, which has escaped them until now. *See A.B.*, 815 N.W.2d at 777.

Finding no merit in Amanda's challenges, we affirm the termination of her parental rights in K.S., P.S., and N.J.

**AFFIRMED.**